# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HARVEY E. POWERS,

        Plaintiff,

        v.                                  Case No. 03-C-893

U.S. DEPARTMENT OF JUSTICE,

        Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #80), DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #93), AND DIRECTING THE CLERK OF COURT TO ENTER JUDGMENT DISMISSING THE PLAINTIFF'S CLAIMS AND THIS ACTION

Plaintiff, Harvey E. Powers, a federal prisoner proceeding pro se, filed the complaint in this action on September 12, 2003, seeking judicial review under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The government has filed a motion for summary judgment and Powers has filed a cross motion for partial summary judgment. Both of these motions will be addressed below.

## BACKGROUND OF THE CASE

On February 10, 2003, Powers made a FOIA request to the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF), Disclosure Division, seeking a "copy of a 'form granting permission to wire [a] house and listen in on phones' that was signed by BATF Informant Wolf, a/k/a 'New York.'" (Compl. App. at 4.) The ATF denied the request pursuant to 5 U.S.C. § 552(b)(7)(A), because release of the document might interfere with a prospective law enforcement proceeding. Powers appealed the denial of his FOIA request to the Department of Justice, which affirmed the Disclosure Division's determination.

Although the document request was denied initially pursuant to the exemption set forth in 5 U.S.C. § 552(b)(7)(A), subsequently the agency took the position that the document did not exist. Special Agent Sandra M. DeValkeneare conducted two unsuccessful searches for the document in a file regarding Patricia Wolf at the ATF office in Milwaukee, Wisconsin.

On September 23, 2004, the court denied the government's motion for summary judgment on the basis that the search for the document conducted by the ATF was not reasonable. Specifically, the government did not show that one agent searching one file of the form Powers was seeking constituted a reasonable search under the circumstances of the case. In addition, the court reasoned that other people, namely Gary Govekar, who was present when the form was allegedly signed, and Assistant United States Attorney Paul Kanter, the supervising attorney at the time the document was created, could have been asked about the form's existence and/or its whereabouts. Finally, the court found that it was unclear whether the government construed Powers' FOIA request liberally. As a consequence, the government was "directed to expand its search of the Power's FOIA request as described herein." (Order of Sept. 23, 2004, at 14.)

In a September 8, 2005, Order, the court granted the government's motion for leave to file a second motion for summary judgment in this case, which the government filed on September 30, 2005. Powers subsequently filed his cross motion for partial summary judgment on January 6, 2006. Both of these motions are fully briefed and ready for resolution.

**STANDARD OF REVIEW**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The FOIA was enacted to maintain an open government and to ensure the existence of an informed citizenry as well as "to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It is to be construed broadly to provide the public with information in accordance with its purposes, and the exemptions from production are to be construed narrowly. *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

Section 552(a)(4)(B) of the FOIA provides that:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter *de novo*, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its

3

action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

5 U.S.C. § 552(a)(4)(B).

It is common for summary judgment to be used in deciding FOIA cases. *Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety, and Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002); *Struth v. FBI*, 673 F. Supp. 949, 953 (E.D. Wis. 1987). Summary judgment is available to the agency in a FOIA case where the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *Miller v. United States Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)); *see also Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995). To discharge this burden, the government "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Miller*, 779 F.2d at 1383-84 (quoting *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

**GOVERNMENTS' MOTION FOR SUMMARY JUDGMENT**

**1. Government's Proposed Findings of Fact and Factual Background**

On February 10, 2003, Powers made a FOIA request to the Department of Treasury, ATF, Disclosure Division, seeking a "copy of a 'form granting permission to wire [a] house and listen in on phones' that was signed by BATF Informant, Patricia Wolf, a/k/a "New York." On March 31, 2003, the ATF responded that it would grant, in part, his request for the

4

record once it has been "identified, retrieved, copied, reviewed and processed." On April 30, 2003, the ATF denied Powers's request pursuant to 5 U.S.C. § 552(b)(7)(A) and provided the following explanation:

> We are denying the records at this time since there are defendants in the investigation that are still awaiting trial. If you wish, you may resubmit your request once all judicial and investigative activity in this investigation has been completed.

(Compl. App. at 12.) This response was based on the ATF's Disclosure Division confirming the status of the investigation to which the document relates, and that the document in question related to a matter currently under investigation by the federal government, and release could interfere with a prospective law enforcement proceeding since it could reveal the scope, direction, or focus of an investigation and chill potential witnesses, dry up sources of information, or hamper agency communication about the investigation.

The Disclosure Division receives approximately 250 initial FOIA requests per month, which are reviewed and processed by seven Disclosure Specialists. Given the voluminous amount of work assigned to each specialist, it is the general practice of the office to not review an underlying case file once a determination has been made that exemption (b)(7)(A) will be applied with respect to that file.

Powers then appealed this determination to the Department of Justice, and the decision to withhold the record was affirmed. Powers filed this lawsuit seeking judicial review pursuant to 5 U.S.C. § 552(a)(4)(B) of the ATF's withholding of the form allegedly signed by Patricia Wolf.

In late August 2003, Special Agent DeValkenaere, the lead case agent on the Outlaws Motorcycle Club investigation, was contacted by an Assistant United States Attorney

5

who asked her to search for "a copy of a 'form granting permission to wire [a] house and listen in on phones' that was signed by BATF Informant, Patricia Wolf, a/k/a "New York."" (DeValkenaere Dec. ¶ 4.) Special Agent DeValkenaere has access to and control of all the documents that are maintained by the ATF relative to the Outlaws Motorcycle Club investigation.[1] The Outlaws Motorcycle Club file relating to every cooperating witness and government in the investigation is maintained at the ATF office located at 1000 North Water Street, Milwaukee.[2] Included are informant files and government files arranged alphabetically. Because Powers believes that an informant, Patricia Wolf, signed the form at issue, if such a form exists, it should be in the Outlaws Motorcycle Club file under Patricia Wolf's name.[3] However, after searching for the document in Patricia Wolf's file, Agent DeValkenaere did not find any such document. Agent DeValkenaere repeated this search on November 28, 2003. Furthermore, the ATF does not have a standard form that an informant must execute to signify approval for ATF to conduct electronic surveillance on his/her property or residence. Special Agent DeValkenaere does not recall having Patricia Wolf sign a sheet of paper or form granting authorization to the ATF to conduct electronic surveillance nor is she aware of such a form's existence.

Assistant United States Attorney (AUSA) Carol Kraft, who is presently the lead prosecutor of the Outlaws Motorcycle Club investigation, participated in the disclosure of

---

[1] Powers disputes that DeValkenaere has access to and control of <u>all</u> documents. *See infra.* at 11.

[2] Powers disputes that the file relating to every cooperating witness and the government is maintained at the ATF office in Milwaukee. *See infra.* at 11.

[3] Powers also disputes that if the form existed, it would be in the file labeled under Patricia Wolf's name. *See infra.* at 11.

6

thousands of pages of discovery materials to the Outlaws Motorcycle Club defendants. AUSA Kraft is aware of testimony by Patricia Wolf that she consented to the installation of "bugs" in her home and that she testified that she executed a document manifesting the consent. AUSA Kraft, however, is unaware of the existence of any such document purporting to be "a 'form granting permission to wire [a] house and listen in on phones' that was signed by BATF Informant, Patricia Wolf, a/k/a "New York." (Kraft Dec. ¶ 3.)

AUSA Paul Kanter, the lead prosecutor at the time the document in question was supposedly signed, is unaware of the existence of the document. If the United States Attorney had such a document, it would have been produced as part of the discovery in criminal Case No. 97-CR-98.[4] AUSA Kanter has reviewed the discovery produced in Case No. 97-CR-98 and did not find any such document.

Former AUSA Eric Klumb was also a prosecutor assigned to the Outlaws Motorcycle Club case and does not recall ever seeing the document that Powers is requesting.

Gary Govekar is a retired detective with Lake County, Illinois Sheriff's Department, and in 1994, participated in the investigation/prosecution of members of the Outlaws Motorcycle Club. He recalls being at several meetings in November and December of 1994 with Patricia Wolf, but he does not recall having Ms. Wolf sign or witnessing her sign a document signifying her approval for the ATF to conduct electronic surveillance at her

---

[4] Powers disputes this proposed fact: "Plaintiff submits a 3-page letter dated May 27, 2005, from the Criminal Division of the DOJ, which clearly supports the claim that AUSA Kanter and/or others unknown from the office of the U.S. Attorney in Milwaukee, transmitted documents related to the bugging of Plaintiff's home to the Criminal Division. (Exhibit 16.0 - 16.2)." (Pl.'s Resp. Br. at 5.) The dispute is discussed *infra.* at 11-12.

7

Case 2:03-cv-00893-CNC   Filed 09/01/06   Page 7 of 19   Document 106

residence. He does not know what Patricia Wolf was referring to in her diary, and he does not have any such document.

ATF Special Agent Joe Cludy, who is now assigned to the Billings, Montana Field Office, was involved in the early part of the criminal investigation/prosecution of members of the Outlaws Motorcycle Club because he was involved in the electronic surveillance part of the investigation. He does not recall meeting with Patricia Wolf on December 23, 1994, and does not recall ever having Ms. Wolf sign nor does he recall witnessing her sign any type of paper or form signifying her approval for the ATF to conduct electronic surveillance. He does not know what she was referring to when she mentioned the form in her diary, and he does not have any such document.

Thomas Doyle, who was a Special Agent with the ATF but is now retired, was involved in the early investigation/prosecution of the Outlaws Motorcycle Club in a supervisory capacity. He does not recall meeting with Patricia Wolf on December 23, 1994, and does not recall ever having her sign or seeing her sign a form or paper signifying her approval for the ATF to conduct electronic surveillance at Wolf's home. He does not have any such information in his possession nor does he know what Patricia Wolf was referring to.

## 2. Analysis

According to the government, the issue in this case is whether the ATF is withholding the requested document. The government concludes that it is not, since the alleged document does not exist in its files. If the document is not being withheld or produced, the government asserts that the court must review whether the adequacy of an agency's search for the requested document was reasonable. The government contends that the ATF made reasonable attempts to locate the requested document.

8

Powers contends that he has produced countervailing evidence undermining the adequacy of the government's search and has further put forth positive indications of overlooked sources likely to turn up the requested consent form. He claims that summary judgment in the government's favor is inappropriate.

In reply, the government asserts that the supporting documents submitted by Powers in support of his response brief fail to comply with Fed. R. Civ. P. 56(e). In addition, the government points out that Powers does not dispute that his FOIA request was sent to the ATF and therefore the issue in this case is whether the search conducted by the ATF was reasonable.

It is undisputed that Special Agent DeValkenaere is the lead case agent on the criminal investigation/prosecution of members of the Outlaws Motorcycle Club. DeValkenaere declares under oath that she searched for the document requested by Powers, stating:

> As the lead case agent on the Outlaws investigation, I have access to and control of all the documents that are maintained by ATF relative to the investigation. These files contain information relating to every cooperating witness and defendant in the Outlaws investigation. These files are kept at the ATF office located at 1000 North Water Street, Suite 1700, Milwaukee, WI 53202. Within the Outlaws Motorcycle Club files there are informant files and defendant files. These files are in alphabetical order.
>
> In late August 2003, I was contacted by an Assistant United States Attorney requesting that I search the file of Patricia Wolf, an informant in criminal proceedings relative to the Outlaws investigation, to determine if we had a "copy of a 'form granting permission to wire [a] house and listen in on phones' that was signed by BATF Informant, Patricia Wolf, a/k/a 'New York,'" as requested by the Plaintiff in this case. Because the form was identified as having been signed by Patricia Wolf, I looked in her file for such a document. I did not locate any such document. I repeated this search on November 28, 2003. There is not such

9

> form in Patricia Wolf's file, which is the only location that I would place such a document.
>
> To my knowledge, ATF does not have a standard form that an informant must execute in order to signify their approval for ATF to conduct electronic surveillance on their property or residence. I do not recall having Patricia Wolf sign a sheet of paper or form granting said authorization to ATF. I do not know what Patricia Wolf was referring to when she mentioned such a form in her diary.

(DeValkenaere Dec. ¶¶ 3-5.) It is also undisputed that AUSA Carol Kraft, the present lead prosecutor of the Outlaws investigation, is unaware of the existence of the document. (Kraft Dec. ¶¶ 2-3.) In addition, AUSA Paul Kanter, who was the lead prosecutor at the time the alleged document was supposedly signed, is unaware of the existence of the document. (Kanter Dec. ¶ 8.) AUSA Kanter averred that if the United States Attorney has such a document, it would have been produced as part of the discovery in criminal Case No. 97-CR-98, but that he reviewed the discovery produced in that case and did not find any such document. *Id.* Furthermore, former AUSA Eric Klumb, who was assigned to the Outlaws investigation, does not recall ever seeing such a document. (Klumb Dec. ¶ 6.) Gary Govekar, a retired detective with the Lake County, Illinois Sheriff's Department who in 1994 participated in the Outlaws case, recalls being at several meetings with Patricia Wolf but does not recall ever having her sign or witnessing her sign such a document. (Govekar Dec. ¶¶ 1, 4, 6.) Govekar does not know what Wolf was referring to in her diary, and he does not have any such document. (Govekar Dec. ¶ 6.) Finally, Special Agent Joe Cludy and Retired Special Agent Thomas Doyle do not have information about the document and do not know what Wolf was referring to in her diary regarding the document. (Cludy Dec. ¶ 6; Doyle Dec. ¶ 6.)

Powers contends that the government's search for the document was not reasonable. He disputes, 1) that Special Agent DeValkenaere has access to and control of all of the documents that are maintained by the ATF concerning the Outlaws investigation; 2) that all such documents are maintained at the ATF office in Milwaukee, Wisconsin; 3) that if such a form existed, it would be in the file labeled under Patricia Wolf's name; and 4) AUSA Paul Kanter's averment that if he had such a document, it would have been produced as part of the discovery in criminal Case No. 97-CR-98.

According to Powers, he has "recently discovered countervailing evidence in a separate Freedom of Information Act (FOIA) litigation which creates a genuine dispute of material fact barring summary judgment." (Pl.'s Resp. Br. at 2.) Powers goes on to describe Kevin O'Neill's[5] FOIA request, the response O'Neill received from ATF Disclosure Specialist Chisholm, O'Neill's appeal to the Department of Justice OIP, and the affirmation of the denial by Richard L. Huff. Powers states that O'Neill has a pending case in this district (Case No. 05-C-306)[6]. Apparently, O'Neill's FOIA request consisted of three documents that "are inextricably linked to the Outlaws Motorcycle Club investigation." (Pl.'s Resp. Br. at 2.) After O'Neill filed his FOIA case in this district, the government answered the complaint, "'denying that the records are in the possession and control of the Bureau of Alcohol, Tobacco, Firearms, and Explosives in Milwaukee, Wisconsin... .' (Exhibit 15.14-15.16) (emphasis added)." (*Id.* at 3.) According to Powers,

---

[5] Kevin O'Neill is Powers' co-defendant in an underlying criminal matter. (*See* Court's Order of Sept. 8, 2005, at 6.) On September 8, 2005, the court denied Powers's motion to join O'Neill as a party in this action or, alternatively, to substitute him as a party. (*Id.* at 7-9.)

[6] O'Neill's case, which was reassigned to this court on June 6, 2006, seeks unredacted records of the BATF under the FOIA regarding "Operation Duster."

11

> The government's answer controverts Agent DeValkenaere's Declaration that she has "access to and control of all the document that are maintained by ATF relative to the [Outlaws Motorcycle Club] investigation." (DeValkenaere Declaration at ¶ 4). Therefore, the files kept at the ATF office located at 1000 North Water Street, Suite 1700, Milwaukee, WI 53202, are not <u>all</u> of the documents relative to the investigation.

(Pl.'s Resp. Br. at 3.) Powers goes on to say,

> Moreover, the defendant has chose to remain silent to Plaintiff's evidence Agent DeValkenaere was transferring numerous documents back and forth with BATF Chief Counsel related to the bugging of Plaintiff's home. (Dkt # 2, Sep. App. 10; Dkt # 50, Exhibit 6; <u>see also</u> Dkt # 68, at 5). Unless the defendant can explain why a further search for the consent form with ATF Chief Counsel Jennifer Segal would be unreasonably burdensome, "an agency cannot limit its search to only one records system if there are others that are likely to turn up the information requested." Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998) (citation omitted).

*Id.* Powers contends that O'Neill's case creates "a reasonable inference Patricia Wolf's file at the BATF office in Milwaukee is not the only place the sought form would be placed." (*Id.* at 5.)

> However, as the government points out in reply,
>
> It is important to note that the standard the Court must apply is whether the search was reasonably conducted. *Weisberg v. Dept. of Justice*, 705 F.2d 1344, 1357 (D.C. Cir. 1983). Based on the documents plaintiff has submitted, the documents requested by Kevin O'Neill related to an "Operation Duster." Plaintiff, however, does not identify how or why Patricia Wolf is related to "Operation Duster" or why it is reasonable to expect that Patricia Wolf's documents would be in "Operation Duster" files.
>
> BATF Special Agent Sandy DeValkenaere, who was the lead case agent for the Outlaws' investigation looked for the requested document in the investigatory files where the document was likely to be located. DeValkenaere Declaration ¶ 4. "Mere speculation that as yet uncovered documents may exist does not

12

> undermine the finding that the agency conducted a reasonable search for them. *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).
>
> The plaintiff further argues that BATF should search for the document in the ATF Chief Counsel's Office because "Agent DeValkenaere was transferring numerous documents back and forth with BATF Chief Counsel related to the bugging of Plaintiff's home." Plaintiff's Brief at page 3. The adequacy of the search, however, is "dependent upon the circumstances of the case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). If Agent DeValkenaere was sending numerous documents to the Chief Counsel's Office as plaintiff states, it is reasonable to conclude that Agent DeValkenaere would know what documents she sent, and even that she maintained copies. However, Agent DeValkenaere searched for the requested document, but does not know its whereabouts or even for that matter, what the document even was. Therefore, it is not reasonable to assume that Agent DeValkenaere sent it to the Chief Counsel's Office.

(Def.'s Reply at 3-4.)

Summary judgment for the defending agency is appropriate in a FOIA case if the agency can demonstrate that it has "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1353; *see also Zemansky v. United States EPA*, 767 F.2d 569, 571 (9th Cir. 1985). The defending agency bears the burden of proving the adequacy of the search. *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *Weisberg*, 705 F.2d at 1350. And the court views the facts, and all reasonable inferences therefrom, in the light most favorable to the requester. *Zemanksy*, 767 F.2d at 571; *Pollack v. United States Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989).

To prevail, the defendant agency must demonstrate that the search was adequate. *Zemansky*, 767 F.2d at 571. This inquiry depends on whether the search was reasonable under the facts of the case. *Id.* The agency must show only that the search was reasonable, not that it was exhaustive or that every document has been located. *Miller*, 779

13

F.2d at 1383; *Zemansky*, 767 F.2d at 571. Also, the agency "must make a diligent search for the requested documents in the places in which they might be expected to be found." *Chamberlain v. United States Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997).

To satisfy its burden the agency may provide "reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571 (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Carney*, 19 F.3d at 812. At a minimum, the affidavits or declarations should provide detail about the method and scope of the search. *See Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993).

If the agency has provided the required affidavits, the burden shifts to the requester to raise a material factual issue concerning the reasonableness of the search. *Miller*, 779 F.2d at 1384. This can be done by "contradicting the [agency's] account of the search procedure or by raising evidence of the [agency's] bad faith." *Id.*; *see also Carney*, 19 F.3d at 812. That no documents responsive to the request were uncovered does not, by itself, constitute evidence of unreasonableness or bad faith. *See Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1295 (N.D. Cal. 1992).

Powers raises no genuine issue of material fact with regard to the adequacy of the search for the document. The government's motion for summary judgment is supported with detailed and non-conclusory affidavits describing the searches for the document that were conducted. *Becker v. I.R.S.*, 34 F.3d 398, 406 (7th Cir. 1994). Agency affidavits are entitled to a presumption of good faith that cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *Safecard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The record shows that the government went beyond the

14

requirements of a reasonable search (and the court's September 23, 2004, Order directing the government to conduct another search) by contacting former AUSA Eric Klumb, Special Agent Joe Cludy, and retired Special Agent Thomas Doyle.

That the government's search failed to turn up the document does not render the search inadequate; the adequacy of the search is determined by the appropriateness of the method. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). As noted, once the agency establishes the adequacy of the search, the burden shifts to Powers to make a showing of bad faith sufficient to impugn the agency's affidavits or declaration. *Carney*, 19 F.3d at 812-13.

Powers has not met this burden. The record is such that no reasonable jury could find that the government did not carry out an adequate search fully consistent with the requirements of the FOIA.

## POWERS'S CROSS MOTION FOR SUMMARY JUDGMENT

Powers contends that the ATF's policy and practice relative to Exemption (b)(7)(A) is irreconcilable with the FOIA. He asserts that the issue in this case is the propriety of the ATF's application of Exemption (b)(7)(A) to deny Powers's FOIA request. According to Powers:

> Here, Plaintiff requested one specific document or record and supplied the BATF disclosure specialist handing the request with more than enough information to ascertain the ATF's Milwaukee Field Office conducted the criminal investigation in question. (Chambers Declaration at ¶ 14). Once the Disclosure Division confirmed the status of the investigation to which the document related, the defendant routinely applied exemption (b)(7)(A) and denied Plaintiff's request. The Chief of the BATF Disclosure Division, Dorothy A. Chambers, effectively admits that the BATF applies Exemption (7)(A) to all requests considered "currently under investigation by the federal government."

15

> (Chambers Declaration at ¶ 11); DPFF 4). Indeed, "it is the <u>general practice</u> of the [Disclosure Division] <u>to not review</u> an underlying case file once a determination has been made that exemption (b)(7)(A) will be applied with respect to that file." (<u>Id.</u> at ¶ 12) (emphasis added).

(Pl.'s Br. at 10) (footnote omitted). Powers requests that the court construe his complaint as seeking whatever combination of equitable and legal relief it may award to remedy the government's impermissible policy and practice which Powers claims has caused him a continuing injury.

The government objects to defending against allegations that were not pled in the complaint. According to the government, a review of the complaint reveals that there is no allegation of a "pattern or practice" by the ATF to violate the FOIA and, it is not appropriate to raise a new theory of relief in a motion for summary judgment. Next, the government argues that this court lacks jurisdiction to consider allegations of a "policy and practice" that allegedly violates the FOIA. *See* 5 U.S.C. § 552(a)(4)(B). Finally, the government contends that the FOIA permits an agency to withhold documents from release in cases where the law enforcement proceeding remains pending and where disclosure would "interfere with enforcement proceedings," and that in this case Dorothy Chambers confirmed that there was an ongoing investigation and further, that disclosure of the type of document requested would interfere with the law enforcement proceeding.

Liberally construed, the complaint could arguably include a policy challenge claim, as argued by Powers. (*See* Compl. at 5.) However, this policy and procedure issue is moot inasmuch as Powers's FOIA request was denied properly, pursuant to 5 U.S.C. § (b)(7)(A).

An agency may refuse to produce records that are within one of the exemptions set forth in the FOIA. The ATF denied Powers's record request citing to the exemption in 5 U.S.C. § 552(b)(7)(A), which provides:

> This section does not apply to matters that are -
>
> . . .
>
> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings[.]

The government bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption. *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998) (citing *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995)). Exemption 7(A) does not permit the government to withhold information merely because that information was compiled for law enforcement purposes. *Solar Sources, Inc.*, 142 F.3d at 1037. Rather, "an agency seeking to shield records or information behind [the Exemption] must show that disclosure could reasonably be expected perceptibly to interfere with an enforcement proceeding." *Id.* (quoting *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989)). The government need not establish that release of a particular document would actually interfere with an enforcement proceeding. *Solar Sources, Inc.*, 142 F.3d at 1037. Instead, "the government need show only 'that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.'" *Id.* (citations omitted). It is, therefore, well-established that the government may justify its withholdings by reference to

generic categories of documents, rather than document-by-document. *Id.* (citing *Robbins Tire*, 437 U.S. at 236).

In this case, before determining that the document in question did not exist in its files, the ATF denied Powers's FOIA request seeking a "copy of a 'form granting permission to wire [a] house and listen in on phones' that was signed by BATF Informant Wolf, a/k/a 'New York.'" (Compl. App. at 4.) The ATF denied the request pursuant to Exemption 7(A), finding that production of the document could reasonably be expected to interfere with enforcement proceedings. The ATF explained that it was denying the record "since there are defendants in the investigation that are still awaiting trial" and also stated that "you may resubmit your request once all judicial and investigative activity in this investigation has been completed." (Compl. App. at 12.) The ATF's response was based on the Disclosure Division confirming the status of the investigation to which the document related, and that the document related to a matter currently under investigation by the federal government. (Chambers Dec. ¶ 11.) It was also reasoned that release of the document could reveal the scope, direction, or focus of an investigation and chill potential witnesses, dry up sources of information, or hamper agency communication about the investigation. *Id.*

The government's explanation for initially withholding the document under Exemption 7(A) was proper. Public disclosure of information under the FOIA would presumably be available to the public as a whole, including targets of the investigation, potential witnesses, and other sources of information. Thus, the court finds that the material was properly exempt from disclosure under 5 U.S.C. § 552(b)(7)(A). *See Solar Sources, Inc.*, 142 F.3d at 1039 (holding that the district court's determination that material was properly exempt from disclosure under Exemption 7(A) was not clearly erroneous where Government's

reason for withholding was that public disclosure of information could result in destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation).

Now, therefore,

IT IS ORDERED that the government's motion for summary judgment (Docket #80) is GRANTED.

IT IS FURTHER ORDERED that Powers's cross motion for partial summary judgment (Docket #93) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court enter judgment dismissing Powers's claims and this action.

Dated at Milwaukee, Wisconsin, this 1st day of September, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge